JAMES P. KEMP, ESQ., Bar No. 6375
jp@kemp-attorneys.com
VICTORIA L. NEAL, ESQ., Bar No. 13382
vneal@kemp-attorneys.com
KEMP & KEMP
7435 W. Azure Drive, Ste 110
Las Vegas, NV  89130
Tel: (702) 258-1183/ Fax: (702) 258-6983

*Attorneys for Plaintiff Jorge Rosales*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

JORGE ROSALES,

     Plaintiff,

  vs.

BELLAGIO, LLC, a Nevada Corporation;  ROE
Business Organizations I-X; and, DOE
INDIVIDUALS I-X, inclusive,

     Defendants.

Case No.: 2:17-cv-03117-JCM-GWF

**OPPOSITION TO DEFENDANT
BELLAGIO'S MOTION FOR SUMMARY
JUDGMENT [ECF NO. 20]**

*(ORAL ARGUMENT REQUESTED)*

   COMES NOW Plaintiff JORGE ROSALES, by and through his Counsel of record, the law firm of KEMP & KEMP, and hereby files his Opposition To Defendant Bellagio's Motion for Summary at ECF No. 20. This Opposition is made upon the papers and pleadings on file herein, affidavits submitted, the attached points and authorities, and such oral argument as the Court may entertain at the hearing of the matter.

   Dated this 26th day of November, 2018.

        /s/ Victoria L. Neal
       JAMES P. KEMP, ESQ., Bar No.: 6375
       VICTORIA L. NEAL, ESQ., Bar No.: 13382
       KEMP & KEMP

       *Attorneys for Plaintiff Jorge Rosales*

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

1

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    PLAINTIFF'S LR 56-1 RESPONSE TO DEFENDANT'S STATEMENT OF FACTS ALLEGED TO NOT BE GENUINELY IN DISPUTE AND PLAINTIFF'S UNDISPUTED *MATERIAL* FACTS**

1.  [1] Facts in this paragraph are in dispute. The "large orders" described by Defendant are not carried, but rather pushed or pulled on tables that roll. **Ex. A to Motion, Rosales Dep., 26:1-18**. It is disputed that a hotbox weighs 36 pounds.  According to Defendant's 30(b)(6) witness, Ms. Harbaugh, there were two different sizes of hotboxes. **Ex. 1, Harbaugh Dep., 102:16-21**. There is, in fact, only one size of hotbox which In Room Dining Director Ms. Gholizadeh *estimated* the weight to be *approximately* 36 pounds. **Ex. 2, Gholizadeh Dep., 43:16-19**. However, Defendant did not conduct a work site study or time and motion study that would provide accurate information on the weight of any item.  **Ex. 1, Harbaugh Dep., 113:23-114:1**. Plaintiff objects and the Court should not consider the information provided in Defendant's footnote 1. **Motion at fn 1, 3:27-28**. This information was needed by Defendant two and one-half years ago *before* it terminated Plaintiff's employment and when engaging in an interactive process.

Plaintiff disputes Defendant's use of the term "repetitive." Nowhere in Defendant's citations is the word "repetitive" used. At best, Plaintiff admits that his work required a lot of neck movement. **Ex. A to Motion, Rosales Dep., 32:20-33:8**.  This does not mean that the movement was repetitive.  Defendant never bothered to clarify with Plaintiff's physician, Dr. Mashood, what was meant by "repetitive" movements because it had its own interpretation. **Ex. 1, Harbaugh Dep., 87:5-88:14; 90:1-24**. Furthermore, In-room Dining Director, Mahnaz Gholizadeh, does not recall Ms. Harbaugh making an inquiry into "repetitive" movements of the neck. **Ex. 2, Gholizadeh Dep., 54:7-9**.

Ms. Gholizadeh further testified that there was a 12 foot tri-level shelfing unit where items needed by servers were kept. **Ex. 2, Gholizadeh Dep., 28:3-32:17**. The first level was waist level

---

1 Defendant Bellagio (herein "Defendant")  provides its Statement of Undisputed Facts in a narrative format. Plaintiff has numbered Defendant's paragraphs  contained in its Statement of Undisputed Facts and will footnote the cross-reference to Defendant's Motion. For instance, Plaintiff's ¶ 1 corresponds to Defendant's Motion 3:6-22. Plaintiff does not address Defendant's Introduction as it contains no record citations. The misinformation and misrepresentations made therein are addressed throughout this Opposition.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

and is where items such as china and glassware were stored. **Id. at 28:20, 29:9-30:9**.   Ms. Gholizadeh had no idea how much a plate weighed. **Id. at 29:22-23**. The second level is approximately 4.8 feet in height and is where silverware, napkins, and condiments were stored. **Id. at 28:21-25; 30:10-31:16**. The third level would require the five foot tall Ms. Gholizadeh to reach up – she did not know the height of the third shelves. **Id. at 29:2-8**.   In sum, the second and third levels of the tri-level shelfing unit held "condiments, silverware and everything else" that went with orders. **Id. at 30:10-15**.

Ms. Gholizadeh additionally testified that servers were responsible for prep work or stocking items although she did not know how much a case of a particular item to be stocked might weigh, but estimated the heaviest weight to be 15 pounds. **Ex. 2, Gholizadeh Dep., 33:19-34:10; 35:25-36:2**. A case of coffee might weigh between 30-40 pounds and is stored on low levels. **Id.   38:18-39:8**. Prep/side work and stocking assignments are made by managers. **Id. at 34:11-12**. Items to be stocked may be kept in a stockroom on multi-level shelfing with the tallest shelf being approximately 10 feet high and reached by a stepladder. **Id. at 36:25-37:12**. Items are removed from the shelfing and are placed on carts or can be hand-carried to the main area. **Id. at 35:22-38:4; 38:18-39:4**.   Prep/side work and stocking assignments were rotated. **Id. at 35:8-11**.

2.   [2]   Facts in this paragraph are in dispute. Plaintiff's May 15, 2014 industrial injury was not sustained "while bringing food to a guest room," but while on the party/hospitality rotation where he had to push two tables that were attached to one another, but which moved independently. **Ex. 3, Rosales Decl., ¶ 4**. The tables were being delivered to a pool area cabana and to be taken up and down ramps. **Id**.   Plaintiff never stated that he "could not perform his job" and Defendant's record citation does not support its statement. **ECF No. 20, 4:4**; **Ex. A to Motion, Rosales Dep. 45:14-46:22**. Plaintiff testified that at that time, March 10, 2016, Dr. Mashood wanted to release him back to work, but he believed he needed more time to heal properly.   **Id.; ECF No. 20, 4:12**. Plaintiff did return to work, but was sent to HR by his supervisor, Diana Holmes, who told him she had received "permanent restrictions from Dr. Mashood," and that she needed him to talk to HR

---

2 Plaintiff's ¶ 2 corresponds to Defendant's Motion 3:24-4:6.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

because she "did not think he could work with a permanent disability." **Ex. A to Motion, Rosales Dep., 48:3-5**.

3.   [3] Facts in this paragraph are in dispute. It is not material that Plaintiff's first Functional Capacity Evaluation was invalid.  Further, Plaintiff's disability rating is not material. Although referenced and relied upon by Defendant, it did not include Karen Crawford's report herein attached as Ex. 4.  Ms. Crawford is a licensed Physical Therapist and found, among or things, that 1) the results of the Functional Capacity Evaluation she performed were valid; 2) Defendant did not supply the job description for a Room Service Waiter and that the Dictionary of Occupational Titles placed Plaintiff's job in the LIGHT physical demand category; and, 3) that Plaintiff could not return to his pre-injury job without lifting restrictions. **Ex. 4, Report of Karen Crawford**, **P10247; P10256.**  Ms. Crawford *did not* identify restrictions of Plaintiff of occasional lifting of up to 36 pounds and frequent lifting up to 18 pounds, but found that Plaintiff's LIGHT position enabled him to, according to the U.S. Department of Labor's Strength Factors Table, to lift 10-20 pounds occasionally and up to 10 pounds frequently. **Id. at P10247.** On March 12, 2015, after Ms. Crawford was provided Plaintiff's job description, she determined that, according to the U.S. Department of Labor's Strength Factors Table, Plaintiff's job was properly classified in the MEDIUM category with a 35 pound lift requirement. **Id.**  Further, Ms. Crawford determined that Plaintiff could "not return to his date of injury job without lifting restrictions." **Id**.

4.   [4] Facts in this paragraph are undisputed.

5.   [5] Facts in this paragraph are not material and/or incomplete and, therefore, are in dispute. It is not material that Dr. Mashood did not reevaluate Plaintiff after the second Functional Capacity Evaluation because his comments and recommendations were "based on patient's clinical and physical examination findings and the recent functional capacity evaluation." **Ex. C-3 to Motion, BLGO-0239**. As a final medical determination**,** Dr. Mashood recommended that Plaintiff "return to work with permanent restrictions including maximum lifting of 36 pounds and avoidance of

---

3 Plaintiff's ¶ 3 corresponds to Defendant's Motion 4:7-11.
4 Plaintiff's ¶ 4 corresponds to Defendant's Motion 4:12-16.
5 Plaintiff's ¶ 5 corresponds to Defendant's Motion 5:17-27.

**KEMP & KEMP**
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

repetitive movements of the neck and avoidance of repetitive reaching overhead on the right side." **Id**.

Although Dr. Mashood's recommendations were ambiguous, Defendant did not seek to clarify what he meant by "avoidance of repetitive movements" or "avoidance of repetitive reaching overhead on the right side" because it had its "own interpretation" of repetitive. **Ex. 1, Harbaugh Depo., 87:5-15; 88:9-14; 90:10-11**. In addition, Ms. Harbaugh admitted that there was nothing which precluded Plaintiff from reaching objects on his left side. **Id. at 89:4-25**. Ms. Harbaugh then tried to rehabilitate that answer stating Ms. Gholizadeh had told her that boxes overhead would weigh more than 35 pounds. **Id. at 91:13-92:13**. This is in direct contradiction to Ms. Gholizadeh testimony that the heaviest item was boxed coffee at maybe 40 pounds, *but that those were kept on lower shelfs*. **Ex. 2, Gholizadeh Dep., 33:19-34:10, 35:25-36:2, 38:18-39:8; *see also supra,* ¶ 1**. Ms. Harbaugh would then admit she did not get specific products out to weigh and did not know what exact product was shelfed overhead. **Ex. 1, Harbaugh Depo., 92:9-93:1**.

6. [6] Facts in this paragraph are not in dispute. However, *see supra* at ¶ 5 regarding Dr. Mashood's medical determination, Defendant's failure to asked for clarifications, and contradictions between the testimony of Defendant's own witnesses. It is also important to notes that any references to occasionally or frequently regarding lifting requirements *were not* the medical recommendations of Mr. Mashood. *See also supra* at ¶ 3.

7. [7] Facts in this paragraph are in dispute. Plaintiff's supervisor did not state she had received "permanent restrictions from Dr. Mashood," but rather told Plaintiff that she needed to talk to HR because she did not think he could work with a permanent disability. **Ex. A to Motion, Rosales Dep., 48:3-5**. The first reason Plaintiff could not work that day was because his health card had expired. **Id. at 52:11-19**. Ms. Harbaugh sent Plaintiff home to look for his health card. **Id. at 52:20-23**. It should also be noted that although on that day, March 10, 2016, Plaintiff expressed his concern about returning to work, it would almost three-weeks later, on March 28, 2016, before

---

6 Plaintiff's ¶ 6 corresponds to Defendant's Motion 5:2-6.
7 Plaintiff's ¶ 7 corresponds to Defendant's Motion 5:7-16.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 • Fax (702) 258-6983

Defendant would meet with Plaintiff to discuss his current status. **Ex. C-4 to Motion.** This allowed Plaintiff additional time he felt he needed to heal.

8. [8] Facts in this paragraph are in dispute. Defendant provides the Declaration Of Jessica Harbaugh in an attempt to refute and create a question of fact in light of Ms. Gholizadeh testimony as follows:

> Q. We were talking about job description. And this has been formerly marked as Exhibit 8. And so I'm just going to hand it -because we don't have the exhibits. If you can take a look at that.
>
> …
>
> Q. Is that the job description?
>
> A. Yes.
>
> …
>
> Q. Okay. So when Jessica called you -- or when you and Jessica communicated about Mr. Rosales, did she tell you that he could only lift a certain amount of weight?
>
> A. Not that I recall.
>
> Q. Did she tell you that he could only push or pull a certain amount?
>
> A. Not that I --
>
> Q. Of weight?
>
> A. -- recall.
>
> Q. I'm sorry. Okay. Did she tell you that he had restrictions for reaching overhead?
>
> A. Not that I recall.
>
> Q. Did she tell that you he had restrictions to avoid repetitive movements of his neck?
>
> A. Not that I recall.
>
> Q. Do you recall if she told you that he had restrictions for avoidance of repetitive reaching overhead on his right side?
>
> A. Not that I recall.
>
> Q. Did she ask you if you could accommodate Mr. Rosales?

---

8 Plaintiff's ¶ 8 corresponds to Defendant's Motion 5:17-27.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

A. She had asked for the job description, which I provided. And it was in a sense of is there anything else a food server would or could do. I said no, this is it. I mean, this is our job description. And if anything, aside from this, it would have to go through you guys.

Q. You guys being HR?

A. HR. The only time I would know anything like that, if somebody's on -- injured and on the temporary light duty.

**Ex. 2, Gholizadeh Dep., 53:2-54:23**.  Further, Ms. Gholizadeh would not have stated that "there was no way to accommodate someone with Plaintiff's restrictions that would allow him to perform the essential functions of the position" because 1) she did not know, even in general terms, what an essential or marginal nonessential function was; and, 2) she left any decision as to accommodations to HR. **Id. at 21:10-22:17; 54:16-24**.  Therefore, Ms. Harbaugh could not have "agreed with Ms. Gholizadeh and concluded that, based on the restrictions provided, Plaintiff could not perform the essential functions of the job with or without a reasonable accommodation" since Ms. Harbaugh never inquired of Ms. Gholizadeh if there was any way to accommodate Plaintiff's disability.

9.  [9] Facts in this paragraph are in dispute. Defendant attempts to meld two different sets of tasks. One set of tasks are those involved with regular room service orders and one set of tasks where the servers have the *option* to do parties which Plaintiff refers to as hospitalities.   A server's predominant task is delivering orders. **Ex. 2, Gholizadeh Dep., 47:2-8**. Plaintiff explained two types of room service. **Ex. A to Motion, Rosales Dep., 25:9-13**. The service which Plaintiff terms as "light work" encompasses "regular" room service orders. **Id**. The other, which he terms as "hospitalities", involves eight or more people.   **Id**. Ms. Gholizadeh confirmed that a party/hospitality is defined as eight or more people. **Ex. 2, Gholizadeh Dep., 48:2-6**.

Ms. Gholizadeh testified that if a server has a party/hospitality rotation he/she *does not* have to do the party and that the only "penalty" would be that the server is "no longer next on the rotation of the party" and "will go to the bottom of the rotation." **Ex. 2, Gholizadeh Dep., 64:2-**

9 Plaintiff's ¶ 9 corresponds to Defendant's Motion 6:1-7:10.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

**10**.   The party/hospitality rotation is heavier than regular room service orders because there is "a lot more equipment that goes on them." **Ex. 2, Gholizadeh Dep., 61:23-62:4**. A server's name would only come up every couple of weeks to do a party/hospitality.  **Ex. 3, Rosales Decl., ¶ 6**.

The testimony cited by Defendant is regarding optional heavy party/hospitality tasks not regular room service duties, but Defendant cherry-picked testimony and it is presented out of context.  For instance, Defendant's record citation to Plaintiff's deposition at ECF No. 20, 6:7-10 is citing to Plaintiff's testimony regarding party/hospitality tasks not regular room service tasks:

> Q. So you agreed that you could not do the full job at that time?
>
> A. No. I was honest with her, yeah, honestly, I cannot do the **hospitalities**. I cannot be pushing or pulling or driving tables that are over 100 pounds, 150 pounds, 200 pounds, and for such a long distance, and the way I got hurt, no, definitely, I cannot do that.

**Ex. A to Motion, Rosales Dep., 53:13-29** (emphasis added).  Plaintiff testified that was the reason he signed out from doing parties/hospitalities. **Id. at 54:18-20**.  As demonstrated above, and contrary to what Defendant asserts, Plaintiff did not agree that his industrial injury prevented him from continuing as a server because of the lifting and movement requirements.  He was prevented from doing optional heavy party/hospitality tasks. Defendant admits that Plaintiff never said he could not do the job. **Ex. 1, Harbaugh Dep., 176:5-12**.

Parties/hospitalities are defined as eight people or more. **Ex. 2, Gholizadeh Dep., 48:2-6**. Further, Ms. Harbaugh's notes of March 28, 2016, clearly indicate Plaintiff explained he could not do the optional heavy parties/hospitalities tasks. **Ex. C-4 to Motion**. Additionally, Ms. Harbaugh admitted that lifting or moving 150 pounds was not an essential function of the server job. **Ex. 1 Harbaugh Dep., 130:6-16**.  Neither Ms. Gholizadeh nor Ms. Harbaugh knew the definition of a marginal (non-essential) function and neither knew what the marginal (non-essential) functions of the server job. **Ex. 2, Gholizadeh Dep., 22:14-17; Ex. 1, Harbaugh Dep., 45:24-46:24**.

During Plaintiff's March 28, 2016, meeting with Ms. Harbaugh she informed him that because of his doctor's permanent restrictions they would have to find him an accommodation. **Ex. A to Motion, Rosales Dep., 52:24-53:3**. Plaintiff responded to Ms. Harbaugh that he could do

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 • Fax (702) 258-6983

8

"light orders … coffee orders, amenities and regular orders." **Id. at 53:3-11**. What Plaintiff could not do was the optional heavy work of the party/hospitalities tasks as discussed above.  Ms. Gholizadeh testified that the "general room service table" was "very generic" and seen in every room service situation." **Ex. 2, Gholizadeh Dep., 41:16-21**.  The "general room service table" has wheels and is "about 73 inches high" and approximately 39" wide." **Id.** On March 28, 2016, Plaintiff asked Ms. Harbaugh for an opportunity to work in room service doing regular room service what he termed as "light work." **Ex. A to Motion, Rosales Dep., 58:9-13**.

Ms. Gholizadeh also testified as to the process of assembling and delivering a regular room service order.  The food server will take the ticket which is assigned by a manager and "go through the kitchen assembling all the supplies necessary for the order." **Ex. 2, Gholizadeh Dep., 24:20-26:10**.  Most of the assembly for the order is done in the center tri-shelf island as discussed in detail *supra* at ¶ 1.  The server then places the hotbox on the lower portion of the cart and places the hot food items from the kitchen inside, takes the table to the guest's room and returns to the kitchen with the hotbox. **Id. at 43:2-6**.

During the March 28, 2016, meeting, Plaintiff told Ms. Harbaugh the things he could and could not do in the room service department. **Ex. A to Motion, Rosales Dep., 76:8-10.** Even today Plaintiff could do regular room services with no problem including assembling, loading, pushing and pulling regular tables loaded with regular orders for at least six people and including two hotboxes. **Ex. 3, Rosales Decl., ¶¶ 11 and 15**.   He can also unload the food where the guest would want it with no problem. **Id.** Clearing away tables is the duty of the bussers. **Id.**; **Ex. 2, Gholizadeh Dep., 46:24-47:3**.   When questioned about "heavy trays" that are carried to a room rather than a table that is rolled, Ms. Gholizadeh testified that there was no reasons those trays could not be placed on a table and pushed to a room. **Ex. 2, Gholizadeh Dep., 70:23-71:10**.

Defendant continues with testimony taken out of context attributing it to Plaintiff's deposition. ***See*, Motion 6:12-7:10** (citing to Plaintiff's deposition). Here, Plaintiff is again speaking to not being able to do the optional heavy work of the parties/hospitalities tasks and specifically references "those nine-footers," stacks of plates, silverware and chafers. **Id.** Regular

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 • Fax (702) 258-6983

room service orders do not have nine-foot tables, stacks of plates, champagne bottles, beer bottles, wine bottles or chafers as explained above by Ms. Gholizadeh who details what regular room service orders contain and the items used.  Further, there were five specific servers in bidded positions assigned to take care of the VIP lounge; therefore, the VIP lounge would not have been part Plaintiff's tasks. **Ex. 2, Gholizadeh Dep., 49:16-18**. The VIP service is also what Plaintiff was speaking about regarding "heavy work."  **Ex. A to Motion, Rosales Dep., 76:6-7**.

Defendant additionally asked if today Plaintiff could do all the side work. **ECF No. 20, 7:5-10**. Today Plaintiff could do all side work, but actually setting up tables (to fold and unfold) which often required two or more people normally. **Ex. 3, Rosales Decl., ¶ 17**. Plaintiff explains that there were always plenty of people to do side work which was assigned by managers. **Id.; Ex. A to Motion, Rosales Dep., 81:7-12**. This fact was confirmed by Ms. Gholizadeh. **Ex. 2, Gholizadeh Dep., 34:11-12**.

10.   [10] Facts in this paragraph are in dispute. Plaintiff did not acknowledge there was no reasonable accommodation that would enable him to perform the essential functions of the job. As stated above, Plaintiff could do the regular room service orders, but not the optional heavy work of the party/hospitality tasks. In addition, Defendant's list of essential functions states a lifting requirement of 35 pounds.  Defendant tried to backpedal with testimony that the 35 pounds requirement is the minimum amount to be lifted and that Plaintiff's restrictions included only *occasionally* lifting 35 pounds; however, Defendant later admitted that occasional lifting was not a permanent restriction from Dr. Mashood. **Ex. 1, Harbaugh Dep., 82:17-86:19; 105:11-106:24**. In addition, as stated above, Defendant had no idea what any item weighed. ***See supra***, **¶ 1, 5, 6**.  The permanent restrictions issued by Dr. Mashood's took into consideration the results of the Functional Capacity Evaluation done by Ms. Crawford yet Defendant chose to not follow Dr. Mashood's permanent restrictions, but to actually impose its own restrictions upon Plaintiff. **Ex. C-3 to Motion; Ex. 4, MML Physical Therapy Functional Capacity Evaluation; Ex. 1, Harbaugh Dep., 105:11-106:24**.

---

10 Plaintiff's ¶ 10 corresponds to Defendant's Motion 7:11-23.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

Although Defendant believed there was a discrepancy with what Plaintiff's permanent restrictions might be, it did not reach out to Dr, Mashood for any clarification and instead unilaterally determined that Plaintiff could not do the job of a server. Defendant acknowledges that with the information it had at the time, including the conflict in that information, it made the determination that an accommodation was not "feasible." **Ex. 1, Harbaugh Dep., 114:22-115:1**.

*After* making the determination that an accommodation was not feasible, Defendant met with Plaintiff.  Ms. Harbaugh notes demonstrate that at the initial March 28, 2016, meeting the decision had already been made that Plaintiff could not perform the essential functions of the server job and he would place in its job search program. **Ex. C-4 to Motion** (typed written agenda at the top of page bullet 2-3 discussing the Job Search Agreement and getting Plaintiff to sign). Ms. Harbaugh's notes corroborate Plaintiff's testimony that he told Defendant he could not do the optional heavy work of party/hospitality tasks.  **Exhibit C-4 to Motion**. Plaintiff also testified that Ms. Harbaugh would not let him talk much during that meeting. **Ex. A to Motion, 76:13-14**.

Ms. Harbaugh talked to Ms. Gholizadeh and then observed the operations asking a few general questions, not specific to Plaintiff, all *before* to talking to Plaintiff. **Ex. 2, Gholizadeh Dep., 55:13-56:12**; **ECF No. 20, 5:17-18**. **Ex. C to Motion, Harbaugh Decl., ¶ 11**.  The observation was done without knowing how Dr. Mashood medically defined "avoidance of repetitive movements of the neck and avoidance of repetitive reaching overhead on the right side" as explained in detail above.  After meeting with Plaintiff, Ms. Harbaugh took no additional steps to determine if Plaintiff's concerns about the optional heavy work of the parties/hospitalities tasks including pushing over 150 pounds. **Ex. 2, Gholizadeh Dep., 55:13-56:12**. [11] Plaintiff had no

---

11 Ms. Harbaugh testified that after Plaintiff told her what he could not do she talked to his department about his concerns. **Ex. 1, Harbaugh Dep., 176:13-24**. However, her testimony is in conflict with and/or contradicted by other testimony and evidence. For instance, Ms. Gholizadeh stated Ms. Harbaugh spoke with her once and also made observations. **Ex. 2, Gholizadeh Dep., 55:13-56:12**. This was before talking to Plaintiff. **ECF No. 20, 5:17-18**; **Ex. C, ¶ 11-13**. It was only Ms. Gholizadeh and Ms. Harbaugh who participated in deciding if Plaintiff could be accommodated (even though he did not need an accommodation as discussed herein). **Ex. 7, Defendant's Answers to Plaintiff's First Set of Interrogatories, Interrogatory 15**. Further, although asked via Interrogatory to detail any interactive process to identify reasonable accommodations, neither Defendant's answers to properly propounded interrogatories nor the documents to which it points mentions anything about Ms. Harbaugh taking additional steps after speaking with Plaintiff. **Id. at Interrogatory 9**. Ms. Harbaugh's notes also do not indicate any additional steps were taken after speaking with Plaintiff. **Exs. To Motion C-4, C-6, C-7**. Nor does Ms. Harbaugh's subsequent

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

permanent restrictions on pushing or pulling, but felt that he should not do the optional heavy work of the party/hospitality tasks so as to not reinjure himself. **Ex. C-3 to Motion**.

Defendant did not offer any reasonable accommodations [12] either before or after speaking with Plaintiff nor did it conduct any further assessments of Plaintiff or of the server position in light of Plaintiff stating what he could or could not do. **Ex. 1, Harbaugh Dep., 187:12-18**. The only thing Defendant offered was to place Plaintiff in its job search program. **Id**.

It is undisputed that Plaintiff declined to consider other MGM properties, but this fact is not material. As explained by Defendant, the only property Plaintiff was eligible to consider for another position under the ADA was the Bellagio. 13**Ex. 1, Harbaugh Dep., 149:4-20**.

11. [14] Facts in this paragraph are in dispute. It is disputed that "Bellagio worked with Plaintiff to find another position." **ECF No. 20, 8:2-3**. This is purely Defendant's opinion and cannot be supported under the correct legal standard and proper analysis. Further, Plaintiff did not need to find another position as he could perform the essential function of his job, told Defendant he could perform his job and his doctor's restrictions stated he could do his job. *See also supra*, **¶¶ 1-10**.

12. [15] Facts in this paragraph are in dispute as they are incomplete and/or not a material as Defendant's violations of the ADA occurred before reaching the point of the job search process as explained. *See infra*, **§ II (b)**.

Plaintiff's testimony is as cited, but the inference Defendant attempts to draw is skewed because it is incomplete. Plaintiff indeed did not want to start over at the bottom because he had 18

declaration mention talking to anyone about Plaintiff's concerns. **Ex. C to Motion**. Finally, had Ms. Harbaugh taken additional steps to ascertain the nature of Plaintiff's statement regarding the optional heavy work of the parties/hospitalities she would have learned that doing the parties/hospitalities was a marginal nonessential function which servers did not have to do. **Ex. 2, Gholizadeh Dep., 64:2-10**.

12 As discussed, Plaintiff did not need an accommodation as he could perform the essential functions of his job. *See infra*, **§ II (b)**.

13 To the extent Defendant argues that under worker's compensation Plaintiff could have gone to another MGM property, Defendant cannot demonstrate that Plaintiff would have been qualified for any position as very precise requirements are set out by Nevada Revised Statues including Plaintiff having to make at least 80% of his previous wages. **Ex. 1, Harbaugh Dep., 74:19-78:24**. Given Defendant's testimony, it is highly unlikely that an injured worker with top seniority earning top wages, like Plaintiff, and who had to start over in a new position at the bottom of the part-time or on-call list would be able to make 80% of his wages. **Ex. 1, Harbaugh Dep., 138:24-139:22**. Therefore, he would not be eligible for positions at other MGM properties under the worker's compensation scheme.

14 Plaintiff's ¶ 11 corresponds to Defendant's Motion 7:24-8:3.

15 Plaintiff's ¶ 12 corresponds to Defendant's Motion 8:4-18.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

years of seniority. **Ex. 3, Rosales Decl., ¶ 4.** Ms. Harbaugh explained that Plaintiff was a "day one employee who has very high seniority in the department" and that with union jobs "seniority is everything, so it's important." **Ex. 1, Harbaugh Dep. 175:4-11**. With Plaintiff's seniority he was guaranteed 40 hours of work per week, regular shifts (start and stop times), and his days off. **Ex. 3, Rosales Decl., ¶¶ 9-10.**   If he started over he would have to start at the bottom again and would be on a part-time list or on-call list with no guarantee of hours to work, shifts, or days off.   **Id.; Ex. 1, Harbaugh Dep., 138:24-139:22.**   In addition, because of Plaintiff's 18 years of loyalty he had earned him four-weeks of vacation time per year which he would lose. **Id**. Nevertheless, Plaintiff took the job listings home to study even though he was able to do his regular room service job and had told Defendant the same. **Ex. 3, Rosales Decl., ¶¶ 10-11**.

The job lists are nothing more than a listing of positions that may or may not be open. **Ex. 5; Ex. 1, Harbaugh Dep., 157:24-158:16, 162:4-21**. A closed position may not necessarily be a position which has been filled. **Id.** The job list does not provide a description of the job or the essential functions of the job putting the entire onus of finding a new position on the job seeker who is without necessary information to make even an initial determination. **Ex. 5**.

13. [16] Facts in this paragraph are in dispute as they are Defendant's summary of facts which it believes are not in dispute, but which are disputed as demonstrated above.  It is undisputed that Ms. Harbaugh continued to print a list of jobs for Plaintiff to look at and that lists do not provide a description or the essential functions of the job as discussed above. ***See also supra*, ¶ 12**.

14. [17] Facts in this paragraph are in dispute. First, facts about Defendant's job search are not material as its violations of the ADA occurred before the job search process. Defendant admits that Plaintiff *did* engage in the interactive process:

> Q.   Number 38, Regarding the facts and circumstances underlying Defendants' claim that plaintiff failed to participate in the interactive dialogue as set forth under defendants' affirmative defenses under paragraph 13. And that's between March 1st, 2016, and April 30 of 2016.

16 Plaintiff's ¶ 13 corresponds to Defendant's Motion 8:19-23.
17 Plaintiff's ¶ 14 corresponds to Defendant's Motion 8:24-9:4.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

And I think we've discussed this, that Mr. Rosales did not fail to participate in the interactive dialogue; is that correct?

A.    He interacted with me. He just didn't -- was unable to tell me what he felt he could do. It was about what he couldn't do.

**Ex. 1, Harbaugh Dep., 195:16-23; see also 150:14-151:8.**

It is Defendant's opinion not supported by any legal analysis or argument and not material that Plaintiff failed to "meaningfully" participates in the job search after April 11. **ECF No. 20, 8:24-26**. As explained above, Plaintiff took the job listings provided by Defendant home to study and inquired about the cashier's position. *See also supra,* **¶ 12; Ex. 1, Harbaugh Dep., 151:20-21.** Furthermore, the job lists are nothing more than a listing of positions that may or may not be open and a closed position may not necessarily be a position which has been filled. **Ex. 5; Ex. 1, Harbaugh Dep., 157:24-158:16, 162:4-21**. The lists do not provide a description of the job or the essential functions of the job putting the entire onus of finding a new position on the job seeker who is without necessary information to even make an initial informed decision on whether he can or cannot perform the job. **Ex. 5**. Most importantly, Plaintiff *could* do the essential function of a server, but could not do the optional heavy work of party/hospitalities tasks and, therefore, did not need to find another position. *See also supra,* **¶ 9**.

Defendant's statement does not speak to issue in this case which is Defendant's failure to engage in good-faith in the interactive process and unilaterally decided Plaintiff could not do his job.

15.  [18] Facts in this paragraph are in dispute. It is disputed that Plaintiff did not tell Ms. Harbaugh what he could and could not do. **Ex. A to Motion 78:8-17;** s*ee also supra*, **¶ 9**. Ms. Harbaugh admitted that Plaintiff expressed a desire to remain in his position and never stated he could not continue in the position. **Ex. 1, Harbaugh Dep., 176:5-12**. In addition, he told her he could do "light work" which he defined as [c]offee orders, regular orders, amenities, which are very light." **Ex. A to Motion 78:8-17;** s*ee also supra*, **¶ 9**. What he could not do was the optional heavy

---

18 Plaintiff's ¶ 15 corresponds to Defendant's Motion 9:5-15.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

14

party/hospitalities which Ms. Harbaugh's notes specify Plaintiff told her. **Ex. C-4 to Motion**.   As discussed at *infra*, § II (b), this demonstrates one instance where Defendant failed to engage in good-faith in the interactive process.

Defendant inserts a comment in this paragraph that "'light work" is not a term that is recognized or used at Bellagio." **ECF No. 9:12**. If Defendant had engaged in good-faith in the interactive process, Ms. Harbaugh would have been interested in and further explored to what Plaintiff was referring. *See also infra*, **¶ 16**.

16. [19] Facts in this paragraph are in dispute. Plaintiff did request to continue working as a server and to not perform the optional heavy work of party/hospitalities tasks.  Ms. Harbaugh's notes demonstrate the same. **Ex. C-4** (notation regarding lifting 150 pounds).  Further, Defendant admits lifting or moving a 150 pounds in not an essential function of the job. **Ex. 1 Harbaugh Dep., 130:6-16**.

Ms. Harbaugh admitted that Plaintiff expressed a desire to remain in his position and never stated he could not continue in the position. **Ex. 1, Harbaugh Dep., 176:5-12**. To the extent Defendant now argues otherwise, that argument is in direct contradiction to Ms. Harbaugh's testimony.  A reasonable jury could find that Plaintiff stating what he could not do, the optional heavy of party/hospitalities tasks, and never telling Defendant that he could not continue in his position, would have provided enough information to Defendant to ascertain what he could do. *See infra*, **§ II (b)**.

It is disputed that Ms. Harbaugh's notes are detailed. In fact, Ms. Harbaugh testified that her notes were summaries not actual transcripts and that she left portions of conversation out of her notes.  **Ex. 1, Harbaugh Dep., 175:23-24; 176:25-177:6**.

17. [20] "Facts" in this paragraph are in dispute as they are Defendant's summary of facts which it believes are not in dispute, but which are disputed as demonstrated above. In addition, there are no record citations to new "facts" espoused. As explained above, Plaintiff told Ms. Harbaugh what he

19 Plaintiff's ¶ 16 corresponds to Defendant's Motion 9:16-20.
20 Plaintiff's ¶ 17 corresponds to Defendant's Motion 9:21-26.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

could and could not do which was regular room service and side/prep work, but could not do the optional heavy work of parties/hospitalities tasks. **Ex. A to Motion, Rosales Dep., 58:9-13; Ex. 1, Harbaugh Dep., 176:5-*12; see also supra*, ¶ 9.** The law does not require Plaintiff to use the word "accommodation" or to alone identify an accommodation. *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1112-13 (9th Cir. 2000)(en banc)(*vacated on other ground sub nom*) ("To put the entire burden for finding a reasonable accommodation on the disabled employee or, effectively, to exempt the employer from the process of identifying reasonable accommodations, conflicts with the goals of the ADA."). With regard to *carrying* large or heavy orders to rooms, Ms. Gholizadeh testified there was no reason why those types of orders could not be placed on a table and pushed to a room. **Ex. 2, Gholizadeh Dep., 70:23-71:10.** Furthermore, Defendant cannot <u>speculate</u> almost two years and one-half years after the fact that "assigning Plaintiff to perform light or side work was not a reasonable accommodation" when *at the time* they failed to engage in good faith in engage the interactive to even attempt to make such determination. However as stated above, Plaintiff could perform the essential functions of a server, but not the optional heavy work of parties/hospitalities. ***See infra*, § II (b) for discussion**.

18. [21] Facts in this paragraph are not material to the cause of action in this case brought under the ADA. Defendant attempts to demonstrate that even without its violation of the ADA Plaintiff would not have been able to perform the essential functions of his server position by incorporating events which occurred ***after*** Defendant had terminated Plaintiff. That is not the benchmark upon which the Court can base its analysis. The benchmark is, as of his termination was there a reasonable accommodation that could have enable Plaintiff to continue to work in his position as a server. Furthermore, what Plaintiff was doing in vocational rehabilitation was different from the job tasks he had as a server and no comparisons can be drawn. No one, including Defendant, can predict what would have happened if Defendant had not terminated Plaintiff. Such speculation might be entertaining in a traditional Hollywood sense, but has no place in legal reality. ***See e.g.,* "Minority Report" (1982).**

---

21 Plaintiff's ¶ 18 corresponds to Defendant's Motion 10:1-7.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

To clarify a misstatement by Defendant although not material to this Motion, it was not the "Company's Vocational Rehabilitation Program" that Plaintiff agreed to participate in after it was clear to Plaintiff that Defendant was going to terminate him. **ECF No. 10:2-3**. Vocational rehabilitation is a mandatory measure under Nevada Revised Statute's when an employee has sustained an industrial injury and if that employee cannot be returned to his previous position. **NRS 616C.530** *et. seq*. It is a last resort. **Id**.

19. [22] Facts in this paragraph are not material to the cause of action in this case brought under the ADA . *See also supra*, **¶ 18**.

20. [23] Facts in this paragraph are not material to the cause of action in this case brought under the ADA. *See also supra*, **¶ 18**.

21. [24] Facts in this paragraph are a summary of what Defendant believes are undisputed facts, but which have been disputed by Plaintiff as demonstrated above. In addition, the summary includes facts not material to the cause of action in this case brought under the ADA. *See also supra*, **¶ 18**.

22. [25] Facts in this paragraph are a summary of what Defendant believes are undisputed facts, but which have been disputed by Plaintiff as demonstrated above. In addition, the summary includes facts not material to the cause of action in this case brought under the ADA. *See also supra*, **¶ 18**.

23. [26] Defendant has not briefed or argued anything about its mitigation defense so facts included in this paragraph are not material to the issues before the Court in the Motion. Additionally, what occurred *after* Defendant terminated Plaintiff's employment is not material to a determination of the issues briefed by Defendant in its Motion.

24. [27] Defendant has not briefed or argued anything about their mitigation defense so the facts included in this paragraph are not material to the issues before the Court in the Motion.

---

22 Plaintiff's ¶ 19 corresponds to Defendant's Motion 10:8-13.
23 Plaintiff's ¶ 20 corresponds to Defendant's Motion 10:14-11:2.
24 Plaintiff's ¶ 21 corresponds to Defendant's Motion 11:3-9.
25 Plaintiff's ¶ 22 corresponds to Defendant's Motion 11:10-12.
26 Plaintiff's ¶ 23 corresponds to Defendant's Motion 11:13-25.
27 Plaintiff's ¶ 24 corresponds to Defendant's Motion 12:1-10.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

1    Additionally, what occurred *after* Defendant terminated Plaintiff's employment is not material to a

2    determination of the issues briefed by Defendant in its Motion.

3    25. [28] Facts in this paragraph are a summary of what Defendant believes are undisputed facts, but

4    which have been disputed by Plaintiff as demonstrated above. As stated *supra* at ¶¶ 1-24, the facts

5    upon which Defendant relies for its summaries are disputed and/or not material to the issues before

6    this Court in the Motion.

7    **II.     LEGAL ANALYSIS AND ARGUMENT**

8        **a.   Standard For Denying Summary Judgment**

9        Federal Rules of Civil Procedure, Rule 56, states in relevant part as follows:

10       **Rule 56. Summary Judgment**

11       **(a)    Motion for Summary Judgment or Partial Summary Judgment.** A
         party may move for summary judgment, identifying each claim or defense

12       — or the part of each claim or defense — on which summary judgment is
         sought. The court shall grant summary judgment if the movant shows that

13       there is no genuine dispute as to any material fact and the movant is
         entitled to judgment as a matter of law. The court should state on the

14       record the reasons for granting or denying the motion.

15

16       Plaintiff, as the non-moving party is entitled to have the court view the evidence in the

17   light most favorable to him. *Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278, 1284 (9th

18   Cir.1982). Plaintiff is entitled to have all reasonable doubt as to the existence of a genuine issue of

19   fact be resolved against Defendant as it is the moving party. *Hector v. Wiens,* 533 F.2d 429, 432

20   (9th Cir.1976). All inferences drawn from the underlying facts must be viewed in the light most

21   favorable to Plaintiff and drawn in his favor as the non-moving party. *Valadingham v. Bojorquez,*

22   866 F.2d 1135, 1137 (9th Cir.1989). Where more than one inference as to the ultimate conclusion

23   is possible, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. America.,* 638 F.2d

24   136, 140 (9th Cir.1981).

25       This Court has set a high standard for the granting of summary judgment in
         employment discrimination cases. Most recently, we explained that " '[w]e require

26

27   ──────────────
     28 Plaintiff's ¶ 25 corresponds to Defendant's Motion 12:11-19.

28

**KEMP & KEMP**
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a "searching inquiry"-one that is most appropriately conducted by the factfinder, upon a full record.' " *Lam v. University of Hawaii,* 40 F.3d 1551, 1563 (9th Cir.1994) (quoting *Sischo-Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1111 (9th Cir.1991)).

*Schindrig v. Columbia Machine, Inc.,* 80 F3d 1406, 1410 (9 Cir.), *cert. denied,* 117 S.Ct. 295 (1996)

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102-03 (9th Cir. 2000). In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. *Nissan Fire,* 210 F.3d at 1102-03.

There are genuine issues of material fact to be determined by the trier of fact prior to any legal determinations that may flow from that set of facts; summary judgment is inappropriate and should be denied in this case.

### b. Plaintiff Makes Out A Prima Facie Case For Discrimination Under the Americans With Disabilities Act As Amended.

To establish a prima facie case for discrimination under the ADA, Plaintiff must demonstrate that he (1) is disabled within the meaning of the ADA; (2) is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) suffered an adverse employment action because of [his] disability. *Samper v. Providence St. Vincent Medical Center,* 675 F. 3d 1233, 1237 (9th Cir.2012). Defendant concedes that Plaintiff was disabled within the meaning of the ADA and that he suffered an adverse employment action because of his disability. **ECF No. 20, 13:22-23**.

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, *with or without reasonable accommodation*, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Humphrey v. Mem'l Hosps. Assn.*, 239 F.3d 1128, 1137 (9th Cir. 2001)(emphasis added). "Essential functions" are "fundamental job duties of the employment position ... not includ[ing] the marginal

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

19

functions of the position." *Bates v. United Parcel Service, Inc*., 511 F. 3d 974, 989 (9th Cir.2007)(citing *Cripe v. City of San Jose,* 261 F.3d 877, 887 (9th Cir.2001). Failure to provide a reasonable accommodation to a qualified individual with a disability can constitute discrimination under the ADA. 42 U.S.C. § 12112(b)(5)(A); *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010).  The question of reasonable accommodation is ordinarily a question of fact. *UPS Supply*, 620 F.3d at 1110 (9th Cir. 2010); *Wong v. Regents of the Univ. of Cal.,* 192 F.3d 807, 818 (9th Cir. 1999) ("Because the issue of reasonableness depends on the individual circumstances of each case, this determination requires a fact-specific, individualized analysis of the disabled individual's circumstances . . . .").

In order to determine if an individual can perform the essential functions of a job, with or without a reasonable accommodation, the employee and employer must engage in good-faith in the interactive process.  *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1118 (9th Cir. 2000)(en banc)(*vacated on other ground sub nom*). An employer has a mandatory obligation to engage in the interactive process. *Barnett*, 228 F.3d at 1114.

The interactive process requires that the employer: (1) meet with the employee who requests an accommodation (or by employer's recognition of the need for an accommodation); (2) request information about the condition and what limitations the employee has; (3) ask the employee what he or she specifically wants; (4) show some sign of having considered employee's request; and, (5) offer and discuss available alternatives when the request is too burdensome. *Barnett*, 228 F.3d at 1115; *UPS Supply Chain Solutions*, 620 F.3d at 1110-11; *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1089 (9th Cir.2002).  The interactive process also "requires that employers analyze job functions to establish the essential and nonessential job tasks. In order to identify the barriers to job performance, employers *must* consult and cooperate with disabled employees so that both parties discover the precise limitations and the types of accommodations which would be most effective." *Barnett*, 228 F.3d at 1115 (emphasis added).

Prior to meeting with Plaintiff, Defendant unilaterally decided he could not do the essential functions of his job as a server, that a reasonable accommodation was not feasible, and that it was

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

placing him into its dead-end job search process. **Ex. C-4 to Motion** (typed written agenda at the top of page bullet 2-3 discussing the Job Search Agreement and getting Plaintiff to sign); **Ex. 1, Harbaugh Dep., 114- 115:1**; *see also supra*, **¶ 10**.  To engage in the interactive process, the ADA mandates that "employers **must** consult and cooperate with disabled employees so that both parties discover the precise limitations and the types of accommodations which would be most effective." *Barnett*, 228 F.3d at 1115 (emphasis added). This logically requires the employer to meet with the employee *before* arriving at a final decision. Here, Defendant made the decision that Plaintiff could no longer perform the essential functions of a server, with or without a reasonable accommodation, before ever talking with him.

Again, before meeting with Plaintiff, Ms. Harbaugh alleges she contacted Ms. Gholizadeh and also observed what servers do. **ECF No. 20, 5:17-18**; **Ex. C, ¶ 11**. Defendant asserts that *together* with Ms. Gholizadeh they determined that Plaintiff could not do the essential functions of the job with or without a reasonable accommodation.  However, this statement is contradicted by Ms. Gholizadeh who testified that she was not asked about accommodations and would have left such decisions up to HR. *See supra,* **¶ 8**. Importantly, Defendant did not look at the marginal or nonessential functions of the server position. In fact, neither Ms. Gholizadeh nor Ms. Harbaugh knew the definition and/or differences between the essential and marginal nonessential functions or how they applied to the server position.  **Ex. 2, Gholizadeh Dep., 22:14-17; Ex. 1, Harbaugh Dep., 45:24-46:24**; *see also supra,* **¶ 9**.  In addition, Ms. Gholizadeh told Ms. Harbaugh that other than what was on the job description there was nothing more to consider. **Ex. 2, Gholizadeh Dep., 54:16-20.**    To engage in the interactive process, the ADA "**requires** that employers analyze job functions to establish the essential and nonessential job tasks." *Barnett*, 228 F.3d at 1115 (emphasis added). Here, Defendant did not analyze the job functions to establish what the essential and nonessential job functions were. Had Ms. Harbaugh done so she would have learned that doing the heavy work of parties/hospitalities tasks was a marginal nonessential function which servers did not have to do. **Ex. 2, Gholizadeh Dep., 64:2-10**. *See also infra*, discussion on Defendant's burden of production regarding essential functions.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

Plaintiff's restrictions from Dr. Mashood were "maximum lifting of 36 pounds and avoidance of repetitive movements of the neck and avoidance of repetitive reaching overhead on the right side." **Ex. C-3 to Motion, BLGO-0239 – Comments and Recommendations**. Defendant did know what Dr. Mashood meant by avoidance of "repetitive" movements of the neck and did not attempt to reconcile the ambiguity or seek clarification. **Ex. 1, Harbaugh Dep., 87:5-88:14; 90:1-25,** *see also supra,* **¶¶ 1, 5**.  Instead, Defendant used its own interpretation of what "repetitive" meant. **Id.**

Ms. Harbaugh admitted there was nothing which precluded Plaintiff from reaching objects on his left side. **Id. at 89:4-25**. Ms. Harbaugh also admitted she substituted her opinion for that of Dr, Mashood's and instead of looking at Plaintiff's permanent restrictions individually, decided a holistic approach would be best. **Ex. 1, Harbaugh Depo., 90:1-25**. In medically determining what permanent restrictions Plaintiff should have, Dr. Mashood specifically stated that he based the restrictions "…on patient's clinical diagnosis and physical examination findings and the recent functional capacity evaluation." **Ex. C-3 to Motion, BLGO-0239**. Defendant decided to use its own interpretation and to intentionally ignore Dr. Mashood's medical determination because Dr. Mashood's medical opinion did not serve Defendant's end-goal of discriminating against Plaintiff and ultimately terminating his employment.

With regard to lifting limitations of 36 pounds imposed by Dr. Mashood, Defendant did not perform a work site study or time and motion study that would provide accurate information on the weight of any item. **Ex. 1, Harbaugh Dep., 113:23-114**. Further, neither Ms. Gholizadeh nor Ms. Harbaugh knew the weights of any item. ***See also supra,* ¶ 5**. Ms. Harbaugh admitted she did not get specific products out to weigh and did not know what exact products were kept overhead. **Ex. 1, Harbaugh Depo., 92:9-93:1;** *see also supra***, ¶¶1, 5, 8**.  Ms. Gholizadeh testified that the heavier items are kept on lower shelfs and a case of coffee, the heaviest item, weighs *maybe* between 30-40 pounds.  **Ex. 2, Gholizadeh Dep., 33:19-34:10, 35:25-36:2, 38:18-39:8**. There was nothing Plaintiff could not lift in regards to the essential functions of the server position.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

Citing to Plaintiff's deposition at Ex. A to Motion 25:3-27:1, Defendant concludes that Plaintiff admitted he could not do the server position. **ECF No 15:14-17**. [29] In that entire portion of Plaintiff's deposition he is speaking about the optional heavy tasks of parties/hospitalities not regular room service order tasks. **Ex. A to Motion, Rosales Dep., 25:11-17**. Defendant admits that Plaintiff never said he could not do the job. **Ex. 1, Harbaugh Dep., 176:5-12**.

In sum, Plaintiff could do the essential functions of the server position demonstrating he is a qualified individual within the meaning of the ADA. Plaintiff has met the elements of a prima facie case for discrimination under the ADA demonstrating that (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of [her] disability. Having met his burden to demonstrate he is a qualified individual able to perform the essential function of the server position, and Defendant's concession that Plaintiff is disabled and suffered an adverse employment action, Defendant's Motion must be denied.

Defendant argues that doing the "heavy" work is an essential function, but its job description/essential functions documents do not state the same. **Ex. C-1 to Motion**. To this glaring fact, Defendant argues that "it is obviously impossible to provide ever essential function on a form checklist." **ECF No 20, 15:10-11**. However, although Plaintiff bears the burden of establishing his prima facie case, Defendant "has the burden of production in establishing what job functions are essential[.]" *Samper v. Providence St. Vincent Medical Center,* 675 F. 3d 1233, 1237 (9th Cir.2012).

While a written job description is evidence of essential job functions, it is not conclusive. *Rohr v. Salt River Project Agri. Improvement & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009). An employer may not "turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Cripe v. City of San Jose*, 261 F.3d 877, 887 (9th Cir. 2001). When there is a conflict in the evidence over

---

[29] Defendant also cites large portions of Plaintiff's testimony at ECF No. 20, 17:1-18:6. This testimony is repeated in its statement of facts at ECF No. 20, 6:7-7:10 and suffers the same fate. Plaintiff's testimony here also addresses the optional heavy parties/hospitality tasks not regular room service orders. *See supra*, **¶ 9**.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

the essential functions of a position, there is a factual dispute notwithstanding the job description an employer has prepared. *Id*. at 888-89.

Here, the evidence demonstrates that what Defendant terms as "heavy" work/large orders were not essential functions of the server job. These "heavy" work/large orders were the parties/hospitalities tasks which Plaintiff spoke about and which Ms. Gholizadeh confirmed were orders for eight or more people. **Ex. 2, Gholizadeh Dep., 48:2-6**; *see also supra*, **¶ 9**. The party/hospitalities tasks were heavier than regular room service orders because there was "a lot more equipment that goes on them." **Ex. 2, Gholizadeh Dep., 61:23-62:4**. Most importantly, Ms. Gholizadeh testified that if a server was assigned a party/hospitality rotation he/she *does not* have to do the party/hospitality and that the only "penalty" would be that the server is "no longer next on the rotation" and "will go to the bottom of the rotation." **Ex. 2, Gholizadeh Dep., 64:2-10**. Defendant cannot discriminate against Plaintiff and penalize him by terminating his employment because he admitted he cannot do the heavy party/hospitalities tasks when not doing that work is optional and carries with it no penalty to a non-disabled employee.  Most importantly, the heavy party/hospitalities tasks were optional which means they were not a fundamental job duty of the server position. *Bates v. United Parcel Service, Inc*., 511 F. 3d 974, 989 (9th Cir.2007)(citing *Cripe v. City of San Jose,* 261 F.3d 877, 887 (9th Cir.2001) ("Essential functions are fundamental job duties of the employment position ...").

Defendant attempts to add some support to its argument stating that a five-gallon jug of coffee weighs at least 41 pounds.  **ECF No. 20, 3:14**. This is information Defendant did not know at the time it determined that Plaintiff could not perform the essential functions of the server position. In addition, a regular room service order would not include a five-gallon jug of coffee – this is just common sense. Defendant, in the same paragraph at ECF No. 20, 3:12-14, states that Plaintiff testified as to weights and pushing and pulling heavy trays and carts. There is no record citation because in each instance where Plaintiff made these types of statements there were in reference to the optional heavy party/hospitalities tasks.  ***See generally supra*, ¶¶ 9, 10, 14, 16, 17 and FN 11**.  Citing to Plaintiff's deposition Defendant states that, "[l]arge orders including

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 • Fax (702) 258-6983

24

dishes, trays, hot boxes, and sleeves routinely exceed 35 pounds as do kitchen supplies and equipment servers must move or carry." **ECF No. 15:14-16**. Plaintiff's deposition cited by Defendant is again talking about the optional heavy work with parties/ hospitalities tasks. **Ex. A to Motion 25:3-27:1**.  As to the kitchen supplies and equipment, Ms. Gholizadeh testified that the heaviest item might be a box of coffee weighing between 30-40 pounds. **Ex. 2, Gholizadeh Dep., 33:19-34:10, 35:25-36:2, 38:18-39:8; *see also supra*, ¶ 1, 9**. Plaintiff could do regular room service job duties with no problem including assembling, loading, pushing and pulling regular tables loaded with regular orders for at least six people and including two hotboxes. **Ex. 3, Rosales Decl., ¶¶ 11 and 15**.

There is a conflict in the evidence over the essential functions of the server position that comes not only from Plaintiff, but also as and between Defendant's own witness. This precludes summary judgement for Defendant and its Motion must be denied.

The issue in this case is did Defendant engage in the interactive process initially? As explained above it did not.  Defendant's entire argument about Plaintiff's alleged failure to "meaningfully" participate in its job search program is irrelevant and not material to the issue in this case.  The job search argument is a smoke-screen and is Defendant's attempt to shift its violations of the ADA by attempting to cobble together a theory in which Plaintiff is at fault for the breakdown in the interactive process. To be clear, <u>after Defendant violated the ADA by not engaging in the interactive process as required and decided unilaterally there was no accommodation that would allow Plaintiff to remain in his position (even though he did not need an accommodation),</u> it determined that Plaintiff must find another position through its job search program.

Defendant's job search program is a one-way ticket to termination. Ms. Harbaugh testified that there has never been a successful disabled individual who found another job through the job search program. **Ex. 1, Harbaugh Dep., 141:1-8**. What are the odds that Defendant Bellagio who has between 8200-8500 employees and hundreds of jobs can never find another job for a disabled employee through its job search program? **Id. at 161:25-162:3**.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

25

The job lists provided by Defendant are nothing more than a listing of positions that may or may not be open. **Ex. 5; Ex. 1, Harbaugh Dep., 157:24-158:16, 162:4-21**. A closed position may not necessarily be a position which has been filled. **Id.** The job list does not provide a description of the job or the essential functions of the job putting the entire onus of finding a new position on the disabled employee who is without necessary information to make even an initial determination that he is interested in the job. **Ex. 5**. Even if the job list included the essential functions of a job it might not be correct. As stated by Defendant, "it is obviously impossible to provide every essential function on a form checklist." **ECF No. 20, 15:10-11**.  Defendant was obstructing the job search process and making it virtually impossible for Plaintiff to make any kind of determination had he needed to find another job. As discussed above, Plaintiff did not need to find another position because he could do the essential functions of his job.

Plaintiff told Ms. Harbaugh he wanted to remain in room service doing regular orders which he termed as "light work" and defined as [c]offee orders, regular orders, amenities, which are very light." **Ex. A to Motion 78:8-17;** s*ee also supra*, **¶¶ 9, 15**. Defendant states, without a record citation, that Plaintiff "never identified any accommodation which would allow him to perform all the essential functions of his job." **ECF No. 20, 9:25-26**.  As explained above he did not need an accommodation. However, Plaintiff expressed a desire to remain in his position and never stated he could not continue in the position. **Ex. 1, Harbaugh Dep., 176:5-12**. Plaintiff told Defendant what he could not do. Yet, Defendant expects this Court to believe that from that information Defendant was incapable of determining what Plaintiff could do.

The law does not require Plaintiff to use the word "accommodation" or to alone identify an accommodation.  *Barnett,* 228 F.3d 1112-13 ("To put the entire burden for finding a reasonable accommodation on the disabled employee or, effectively, to exempt the employer from the process of identifying reasonable accommodations, conflicts with the goals of the ADA.").  If Defendant had further investigated and explored what Plaintiff was saying, it would have discovered that the heavy parties/hospitalities tasks *were not* essential functions of the server position, that employees did not have to do the heavy parties/hospitalities tasks, and that there

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

were no penalties if an employee did not want to do the heavy parties/hospitalities tasks. But that did not fit into Defendant's game plan which was to terminate Plaintiff because he had a disability. Indeed, Plaintiff's immediate supervisor, Diana Holmes, told Plaintiff he can't work with restrictions and permanent restrictions. **Ex. A to Motion, Rosales Dep., 48:4-5, 46:23-47:15**. That is a per se violation of the ADA.  For the reasons stated above, Defendant's Motion must be denied.

### c. Defendant Did Not Engage In The Interactive Process In Good Faith

"The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees" with a shared goal of identifying an accommodation that allows an employee to perform his job effectively. *Barnett*, 228 F.3d at 1114-15.

> In order to demonstrate good faith, employers can point to cooperative behavior which promotes the identification of an appropriate accommodation. Employers should "meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome.

*Barnett*, 228 F.3d at 1115 (internal citation omitted). As detailed above, Defendant wholly failed in the interactive process as required under the ADA and decided unilaterally that Plaintiff could not perform the essential functions of the server position when, in fact, Plaintiff could perform the essential functions.   A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.". *Beck v. University of Wis. Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996) (citing approvingly in *Barnett*, 228 F.3d at 1115).   An employer "cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1116.

Here, among others things, Defendant 1) never contacted Plaintiff's doctor to determine what was meant medically that Plaintiff should avoid repetitive movements of the neck (Defendant admitted Plaintiff could reach with his left side); 2) rejected Plaintiff's doctor's

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 • Fax (702) 258-6983

permanent restrictions in favor of its own interpretation; 3) failed to respond to the information Plaintiff provided never questioning why Plaintiff was talking about weights that were grossly over what was listed in its essential functions[30]: 4) never ascertained the difference between regular room service orders and parties/hospitalities[31]; 5) never performed a work site or time and motion study; 6) never ascertained the weights of any products or items, 7) never determined what the essential versus marginal nonessential functions of the server position were; and, 8) did not speak to Plaintiff before determining that he could not do the essential functions of the job. In sum, there was no cooperative behavior on Defendant's part because it had decided that Plaintiff had to be terminated and it had no interest in engaging in the interactive process.

There is a genuine dispute as to whether Defendant engaged in good faith in the interactive process which precludes summary judgement. Defendant's Motion must be denied.

### d.  Plaintiff Did Not Request A Permanent Light Duty Position

Plaintiff did not request "light work on a permanent basis" and Defendant has no record citation stating he did. **ECF No. 20, 22:14-15**. In fact, Defendant does not really know stating, "Plaintiff appears to take that position…". **Id**. As explained in detail above, Plaintiff could do the essential functions of the server position, but not the optional heavy marginal nonessential functions that were the parties/hospitalities tasks.

### e.  Punitive Damages

A reasonable jury could easily conclude that Defendant engaged in reckless indifference such that an award of punitive damages is warranted. Here, there is evidence that Defendant knew Plaintiff could do the essential functions of the server position, but decided that Plaintiff had to be terminated and took all measures to insure he was. In the alternative, and as explained in detail herein, Defendant did not take the appropriate steps to determine if an accommodation was

---

30 To the extent Defendant argues it did not understand what Plaintiff was speaking about as to any aspect, it had a duty in the interactive process to clarify and ascertain specifics.  Plaintiff testified as to the first meeting on March 28, 2016, Ms Harbaugh did not let him talk much. **Ex. A to Motion, 76:13-14**.

31 To the extent Defendant argues it did not understand what Plaintiff was speaking about as to any aspect, it had a duty in the interactive process to clarify and ascertain specifics.  Plaintiff testified as to the first meeting on March 28, 2016, Ms Harbaugh did not let him talk much. **Ex. A to Motion, 76:13-14**.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

actually needed based the permanent restriction from Dr. Mashood instead opting to substitute its own interpretation.

Defendant knew of its obligations under the ADA and made a conscious decision to not follow those requirements.  This intentional refusal is a conscious voluntary act from which a reasonable jury could conclude that punitive damages are warranted. In addition, Defendant unilaterally placed Plaintiff in its dead-end one-way ticket to termination job search process (which violated the ADA itself) knowing that Plaintiff would not be successful. A reasonable jury could find Defendant's conduct demonstrates reckless indifference to Plaintiff's federally protected rights for which punitive damages are warranted.

Defendant denied Plaintiff's request to be returned his position as a server without conducting any further investigation, exploration or individual assessment or analysis because it had already decided that Plaintiff had to be terminated and looking into his request and statements regarding the optional heavy party/hospitalities tasks would have been counterproductive to its goal of termination. A reasonable jury could find Defendant's conduct demonstrates reckless indifference to Plaintiff's federally protected rights for which punitive damages are warranted.

Accordingly, viewing the evidence in the light most favorable to Plaintiff, there has been presented sufficient evidence from which a reasonable jury could find that Defendant demonstrated   deliberate indifference towards Plaintiff's federally protected rights under the ADA.

**\*\* REMAINDER OF PAGE INTENTIONALLY LEFT BLANK \*\***

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 • Fax (702) 258-6983

**III.   CONCLUSION**

Based upon the foregoing the Court should deny Defendant's Motion for Summary Judgment as to the First Cause of Action, Discrimination in Violation of the Americans With Disabilities Act. There are genuine issues of material fact to be determined by the trier of fact prior to any legal determinations that may flow from that set of facts; summary judgment is inappropriate and should be denied in this case.

Plaintiff withdraws his Second Cause Action, Discrimination in Violation of the Age Discrimination in Employment Act, his Third Cause of Action, National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964, and his Fourth Cause of Action, Discrimination in Violation of the Civil Rights Act of 1966 and those actions should be dismissed with prejudice.

Dated this 26th day of November, 2018.

_/s/ Victoria L. Neal_
JAMES P. KEMP, ESQ.
VICTORIA L. NEAL, ESQ.
KEMP & KEMP

*Attorneys for Plaintiff Jorge Rosales*

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

## CERTIFICATE OF SERVICE

The undersigned certifies that the within and foregoing Opposition To Defendant Bellagio's Motion for Summary was served to all counsel and persons associated with this case via the court's CM/ECF system on the date below.

Dated this 26th day of November, 2018.

_____/s/ Victoria L. Neal_____
VICTORIA L. NEAL, ESQUIRE

**KEMP & KEMP**
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983