UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JORGE ROSALES, | Case No. 2:17-CV-3117 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| BELLAGIO, LLC, | |
| Defendant(s). | |

Presently before the court is defendant Bellagio, LLC's ("Bellagio") motion for summary judgment. (ECF No. 20). Plaintiff Jorge Rosales filed a response (ECF No. 23), to which Bellagio replied (ECF No. 27).

Also before the court is Bellagio's motion for leave to file excess pages. (ECF No. 26). Rosales did not file a response and the time to do so has passed.

**I.  Facts**

Bellagio hired Rosales as a room service food server on September 28, 1998, and kept Rosales employed in that capacity until April 28, 2016. (ECF Nos. 1-1, 20). Rosales' work responsibilities included delivering food and beverage orders from the kitchen to hotel guests. (ECF No. 20-2). These tasks required Rosales to lift heavy items such as a hotbox that weighs approximately 36 pounds. (ECF Nos. 20, 20-1, 23).

On May 15, 2013, Rosales injured his neck, back, and right shoulder while performing his job duties. (ECF No. 20-1, 23-4). In September 2014, Rosales underwent surgery on his shoulder. (ECF No. 20-1). Because his pain persisted for another year, Rosales had a second surgery in September 2015. *Id*. In March 2016, Rosales' doctor recommended that Rosales "return to work with permanent restrictions including maximum lifting of 36 pounds and

**James C. Mahan**
**U.S. District Judge**

avoidance of repetitive movements of the neck and avoidance of repetitive reaching overhead on the rights side." *Id*.

When Rosales initially returned to work, Jessica Harbaugh, a human resources personnel at Bellagio, prevented Rosales from working due to the restrictions that Rosales' doctor recommended. *Id*. Harbaugh contacted Mahnaz Gholizadeh, the director of in-room dining, to determine what accommodations could allow Rosales to perform his job duties. *Id*. Gholizadeh informed Harbaugh that there was no reasonable accommodation that would allow Rosales to return to work because servers regularly lift heavy objects, reach overhead, and move their necks respectively. *Id*. After conducting her own investigation into the duties of a server, Harbaugh agreed with Gholizadeh's assessment. *Id*.

Eventually, Rosales met with Harbaugh to discuss if there was any accommodation that would allow Rosales to return to work. *Id*. Rosales informed Harbaugh that he could return to work if his duties were restricted to "light orders, just, like, coffee orders, amenities, regular orders that didn't involve to much effort." *Id*. Bellagio determined that such a restriction would prevent Rosales from performing the essential functions of his job and that an alternative accommodation was not available. *Id*.

Harbaugh subsequently offered Rosales Bellagio's job placement assistance program, where Bellagio would work with Rosales to find a vacant position at any MGM Resorts property that Rosales would be able to perform with or without accommodations. *Id*. Rosales agreed to meet with Harbaugh on a weekly basis so she could assist him in finding a new position. *Id*. Under the job placement assistance program, Rosales would have 30 days, from March 28, 2016, to April 27, 2016, to conduct the job search. *Id*.

Harbaugh spoke with Rosales about his job skills and provided him with a list of jobs available at Bellagio on three different occasions. *Id*. On April 11, 2016, Rosales met with Harbaugh and informed her that he did not want to work a new job because he would lose his seniority status. (ECF Nos. 20-1, 23-4). Bellagio contends that after the April 11, 2016, meeting, Rosales ceased to meaningfully participate in the job placement assistance program.

(ECF No. 20). When the 30-day search period ended, Rosales did not request to extend the job search. (ECF No. 20-1).

On April 28, 2016, Bellagio terminated Rosales because he was unable to perform the essential functions of a server and declined to pursue other available positions within the company. *Id*. At the time of termination, Rosales was 66 years old. (ECF No. 1-1).

Rosales thereafter initially agreed to participate in Bellagio's vocational rehabilitation program. (ECF No. 20-1). Rosales elected to go to Briarwood College to take an 18-month course to obtain a college degree that would allow him to work with medical records. *Id*. Bellagio agreed to pay Rosales $1,800 per month while taking the course. *Id*. However, Rosales quit the vocational training program because he was afraid that the course would give him a brain stroke. *Id*.

On September 6, 2017, Rosales initiated this action in state court. (ECF No. 1-1). In his complaint, Rosales asserts four causes of action: (1) discrimination in violation of the Americans with Disabilities Act ("ADA"); (2) discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (3) discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII); and (4) discrimination in violation of the Civil Rights Act of 1966. *Id*.

On December 27, 2017, Bellagio removed this action to federal court. (ECF No. 1). Now, Bellagio moves for summary judgment on all four causes of action. (ECF No. 20).

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to

be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and

allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

As a preliminary matter, the court will deny Bellagio's motion to file a reply that exceeds the 20-page limit set forth in Local Rule 7-3. The court notes that Bellagio has taken the liberty of filing its non-compliant reply without first obtaining the court's leave. As a remedial measure and for purposes of judicial efficiency, the court will consider only the first 20 pages of Bellagio's brief. *See Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (holding that district courts have inherent power to control their own dockets).

Next, the court will dismiss with prejudice Rosales' second, third, and fourth causes of action in accordance with Rosales' request. *See* (ECF No. 23). Thus, only one cause of action remains in dispute: discrimination in violation of the ADA.

*a. Discrimination in violation of the Americans with Disabilities Act*

In evaluating discrimination claims, courts use the *McDonnell Douglas* burden-shifting framework. [Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010)](); *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006). Under this analysis, an employee must first establish a *prima facie* case of retaliation. [Noyes v. Kelly Servs., 488 F.3d 1163, 1168 (9th Cir. 2007)](); *see Cornwell*, 439 F.3d at 1034–35. If an employee establishes a *prima facie* case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1156. If the employer meets this burden, the employee must then

raise a triable issue of material fact as to whether the employer's proffered reasons for its adverse employment action are mere pretext for unlawful retaliation. *Noyes,* 488 F.3d at 1168.[1]

> *i. Prima facie case*

To establish a *prima facie* case for disability discrimination, a plaintiff must demonstrate that: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (citing *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003)).

Bellagio, despite conceding the first and third elements, argues that Rosales has failed to establish a *prima facie* claim because there does not exist any reasonable accommodation that would allow Rosales to perform the essential functions of a server. (ECF No. 20).

"An employer discriminates against a qualified individual with a disability by 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee.'" *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (quoting 42 U.S.C. § 12112(b)(5)(A)) (emphasis added). "[O]nce an employee requests an accommodation or an employer recognizes the employee needs an accommodation but the employee cannot request it because of a disability, the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Id.* (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc), *vacated on other grounds*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)).

The evidence before the court is sufficient to establish a *prima facie* claim for discrimination. Prior to engaging in the interactive process, Harbaugh and Gholizadeh

---

[1] Courts often combine ADA, ADEA, and Title VII claims for analysis because the burdens of proof and persuasion—here, the *McDonnell Douglas* framework—are the same. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 888 (9th Cir. 1994); *Dep't of Fair Emp't and Housing v. Lucent Techs.*, 642 F.3d 728, 748–49 (9th Cir. 2011); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 (2003). Thus, the court hereby address Rosales' discrimination claims and applies the *McDonnell Douglas* burden-shifting framework when applicable.

determined that there did not exist any reasonable accommodation that would allow Rosales to return to work. *See* (ECF No. 20-1). This conduct shows that Bellagio did not engage in the interactive process in good faith. *See Zivkovic*, 302 F.3d at 1089 (holding that employers must engage in the interactive process in good faith).

Moreover, Rosales emphasizes that his doctor restricted him only from lifting over 36 pounds. *See* (ECF Nos. 20-1, 23). Gholizadeh testified at his deposition that the heaviest items that servers are expected to lift weigh between 30 and 40 pounds. (ECF No. 23-3). Thus, because Rosales was able to lift most, if not all, items that servers handle, the substantive record allows the court to infer that there was a reasonable accommodation that would allow Rosales to work as a server. *See Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1091 (9th Cir. 2001) ("Making a *prima facie* showing of employment discrimination is not an onerous burden.") (italics added).

In light of the foregoing, Rosales has produced sufficient evidence to establish a *prima facie* case for discrimination in violation of the ADA.

### *ii. Legitimate nondiscriminatory reason*

The burden now shifts to Bellagio to provide a legitimate, nondiscriminatory reason for Rosales' termination. *See McDonnell Douglas Corp. v. Green*, 411, U.S. 792, 802 (1973). Bellagio claims that, based on the doctor's recommendations, Rosales was not capable of performing the essential functions of a server and that a reasonable accommodation was not available. (ECF No. 20). Thus, Bellagio has articulated a legitimate reason for terminating Rosales.

### *iii. Pretext*

The burden now shifts back to Rosales to raise a triable issue of material fact as to whether Bellagio's proffered reason is a mere pretext for unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 803.

A plaintiff can raise a triable issue regarding pretext either indirectly, by showing the employer's proffered explanation in unworthy of credence because it is internally inconsistent or otherwise not believable, or directly, by showing that unlawful discrimination more likely

motivated the employer. *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002). Circumstantial evidence must be specific and substantial. *Id*.

Rosales has not provided any evidence showing that unlawful discrimination against employees with disabilities motivated Bellagio's decision to terminate Rosales. The court also does not find Bellagio's proffered reason inconsistent or unbelievable. Therefore, because there does not exist a triable issue of fact as to whether Bellagio's reason for terminating Rosales was pretextual, the court will grant summary judgment on Rosales' first cause of action.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Bellagio's motion for summary judgment (ECF No. 20) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that Bellagio's motion to file excess pages (ECF No. 26) be, and the same hereby is, DENIED.

DATED March 27, 2019.

_____
UNITED STATES DISTRICT JUDGE