UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JORGE ROSALES, | Case No. 2:17-CV-3117 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| BELLAGIO, LLC, | |
| Defendant(s). | |

Presently before the court is defendant Bellagio, LLC's ("Bellagio") renewed motion for summary judgment. (ECF No. 45). Plaintiff Jorge Rosales responded in opposition (ECF No. 49) to which Bellagio replied (ECF No. 52).

I.  **BACKGROUND**

Jorge Rosales is a former Bellagio room service food server. (ECF No. 45 at 3). After eighteen years of service, he injured his neck, back, and shoulder on the job in May 2014 and underwent shoulder surgery. (*Id.* at 3). In March 2016, Rosales's doctor recommended that he "return to work with permanent restrictions including maximum lifting of 36 pounds and avoidance of repetitive movements of the neck and avoidance of repetitive reaching overhead on the right side." (*Id.* at 4). Rosales was terminated in April 2016 after an unsuccessful assisted job search process. (*Id.* at 10). He alleges that Bellagio failed to provide a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(5)(A). (Compl., ECF No. 1-1).

Bellagio previously moved for summary judgment, contending that Rosales admitted he could not do the essential functions of the job with a reasonable accommodation and that it reached this conclusion after a good faith interactive process. (Order, ECF No. 28 at 7).

**James C. Mahan**
**U.S. District Judge**

The court granted summary judgment for Bellagio. (*Id.*). The court applied the *McDonnell-Douglas* burden-shifting framework and held that Rosales failed to raise a genuine issue of material fact as to pretext. (*Id.* at 8).

In a 2-1 decision, the Ninth Circuit reversed. (Mem., ECF No. 36). It held that the court incorrectly applied the more general disability discrimination standard rather than the more specific law on failure-to-accommodate claims. (*Id.* at 2–3). It also added that the court's order was not "internally consistent" and "congruent with the arguments of the parties." (*Id.* at 3). Writing in dissent, Judge Patrick Bumatay agreed that the court applied the wrong legal standard but saw no reason to remand the case for the court to merely reenter summary judgment for Bellagio because "Rosales can't show any reasonable accommodation exists here." (*Id.* at 9–10 (citing *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018)). Bellagio now renews its motion for summary judgment. (ECF No. 45).

## II.   LEGAL STANDARD

Summary judgment is proper when admissible evidence in the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[1] Fed. R. Civ. P. 56(a). The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid unnecessary trials on undisputed facts. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears

---

[1] The court can consider information in an inadmissible form at summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

the burden of proof on a claim or defense, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the party opposing summary judgment to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a fact is "material" if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The opposing party does not have to conclusively establish an issue of material fact in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). But it must go beyond the pleadings and designate "specific facts" in the evidentiary record that show "there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. In other words, the opposing party must show that a judge or jury has to resolve the parties' differing versions of the truth. *T.W. Elec. Serv.*, 809 F.2d at 630.

The court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The court's role is not to weigh the evidence but to determine whether a genuine dispute exists for trial. *Anderson*, 477 U.S. at 249.

### III. DISCUSSION

To establish a prima facie case for discrimination under the ADA, the employee must show that (1) he is disabled within the meaning of the ADA, (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. *Samper v. Providence St.*

U.S. District Judge

- 3 -

*Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (examining the essential functions of an NICU nurse).

"[O]nce an employee requests an accommodation . . . the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002); *see also* 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.2(o)(3). But "there exists no stand-alone claim for failing to engage in [an] interactive process. Rather, discrimination results from denying an available and reasonable accommodation." *Snapp*, 889 F.3d at 1095.

Thus, to survive summary judgment, the employee must identify "the existence of a [facially] reasonable accommodation." *Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006). Or in the words of Judge Bumatay: "Our decisions now hold that an employer may still prevail on a summary judgment motion—despite a genuine dispute as to good-faith participation in the interactive process—if the employer proves no reasonable accommodation is available." (ECF No. 36 at 8).

Essential functions of a job are "fundamental job duties" and not "marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A function can be essential for many reasons, including whether the job exists to do the function, the "limited number of employees available" who can do the function, and if the function is "highly specialized." *Id.* § 1630.2(n)(2). Evidence of whether a function is essential includes the employer's judgment, the job description, the time spent on the function, and the consequences of not doing the function. *Id.* § 1630.2(n)(3). The inquiry is fact-specific and the employer has the burden of production in establishing what job functions are essential. *Samper*, 675 F.3d at 1237.

Although a "reasonable accommodation" can include adjusting physical facilities, work schedules, equipment, or even some job restructuring, it does not include eliminating essential functions of a job. *See* 29 C.F.R. § 1630.2(o)(2)(ii). In other words, an employer need not "convert a temporary light-duty position into a permanent one" or effectively "create a new position." *Rund v. Charter Commc'ns, Inc.*, 319 F. App'x 465, 467 (9th Cir. 2008) (citation omitted). Whether a reasonable accommodation exists is ordinarily a

question of fact for a jury.  *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010) (citing *Lujan v. Pac. Mar. Ass'n*, 165 F.3d 738, 743 (9th Cir. 1999)).

### A. Rosales's description of the essential functions of a food server and his requested accommodations

In his deposition testimony, Rosales divides the functions of a food server into three categories: (1) room service orders, (2) hospitalities, and (3) side work.  (*See* Morales Dep., ECF No. 45-1 at 5; *see also* ECF No. 49 at 7, 24).  In a later declaration, Rosales averred that he could do "regular room services including loading, pushing and pulling regular tables loaded with regular orders and two hotboxes" and "unload the food where the guest would want it with no problem."  (Rosales Decl., ECF No. 49-4 at 4).  He could place heavier room service orders onto a rolling table and push them to a room, a common practice for all food servers.  (ECF No. 49 at 8, 24).

Rosales argues that hospitality tasks are optional and *not* an essential function.  The job description does not mention hospitalities.  (*Id.* at 25).  And "[n]o server was required to do the [hospitalities] rotation, [ ] the lifting weights involved were not encompassed in the essential functions, and [ ] there was no specialized knowledge required to perform the task."  (*Id.*).  And even if hospitality tasks are an essential function, a reasonable accommodation would be to not assign Rosales to such tasks based on Bellagio's past accommodations.  (*Id.* at 25–26 (citing *Wong v. Regents of Univ. of California*, 192 F.3d 807, 820 (9th Cir. 1999)).

Rosales argues that side work is not essential either "even though it is listed in the job description."  (*Id.* at 26).  "It is undisputed that prep/side work and stocking assignments could be done by any server, and that side work tasks were assigned daily by the managers on a rotation basis, so servers were not stuck doing the same thing."  (*Id.*).  And again, even if side work is an essential function, there is a side work task Rosales could do—cleaning the beverage area—which now requires Bellagio to show why this accommodation would be an undue hardship.  (*Id.* at 29).

Given Rosales's description of the job, he says there is a factual dispute over the essential functions and "a reasonable jury could find that the optional hospitalities and side

James C. Mahan
U.S. District Judge

- 5 -

work were not essential functions, but marginal functions that other servers could perform, and that the server position could be restructured as a reasonable accommodation." (*Id.* at 27).

### B. There is no genuine dispute over the essential functions of the job and the unreasonableness of Rosales's requested accommodations

The court finds that there are no reasonable accommodations that would have allowed Rosales to do the essential functions of a food server.  Rosales requests three accommodations: (1) modified room service orders that do not require lifting more than 36 pounds or reaching overhead, (2) a full exemption from hospitality tasks, and (3) an exemption from almost all side work tasks like carrying jugs, reaching high shelves, restocking heavy items, and folding tables.  (ECF No. 52 at 9).  Alternatively, if side work and hospitality tasks are nonessential as Rosales contends, this leaves food servers with few, if any, essential functions.

Bellagio determines the duties of its food servers and the court hesitates to second-guess its determinations. *See* 42 U.S.C. § 12111(8).  Thus, "if an employer has a legitimate reason for specifying multiple duties [of a job], duties the [employee] is expected to rotate through, a disabled employee will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its *essential* duties." *Miller v. Illinois Dep't of Corr.*, 107 F.3d 483, 485 (7th Cir. 1997) (Posner, C.J.) (emphasis in original); *see also Basith v. Cook Cnty.*, 241 F.3d 919, 929 (7th Cir. 2001) ("It is possible that any function, whether or not essential, could be assigned to additional employees. The mere fact that others could do [plaintiff's] work does not show that the work is nonessential.").

The record supports Judge Bumatay's conclusion that Rosales is "incapable of performing" side work which is "undisputed[ly]" an essential function of a food server. (ECF No. 36 at 4).  Rosales readily testified that he cannot do most of the side work. (ECF No. 45-1 at 8–10, 32–33).  Specifically, he admitted he cannot carry a gallon of milk or juice from the refrigerator or fold and unfold tables.  (*Id.*).  Yet Bellagio lists side work in the job

James C. Mahan
U.S. District Judge

- 6 -

1  description for a room service food server.  (ECF No. 45-3).  And the consequence of not
2  doing side work is that areas would be left unclean and unstocked, leading to servers not
3  bringing food to guests.  (ECF No. 52 at 13; Gholizadeh Dep., ECF No. 49-3 at 17–25
4  (describing rotating side work tasks));  *see also* 29 C.F.R. § 1630.2(n)(3)(iv).  And as
5  aforementioned, just because other food servers could pick up the slack for Rosales is not
6  enough to put the essential nature of a food server's side work in genuine dispute.

7  And besides, Rosales's opinions and speculation cannot create a genuine dispute
8  especially when Bellagio's determinations of the essential functions of the job receive
9  considerable deference.  *See Lezama v. Clark Cty.*, 817 F. App'x 341, 345 (9th Cir. 2020).
10 In fact, his deposition testimony suggest it is impossible for food servers to avoid hospitality
11 tasks for large parties during most shifts.  (Rosales Dep., ECF No. 52-2 at 3–4); *see* 29
12 C.F.R. § 1630.2(n)(2)(ii).  And his testimony casts doubt on whether he can even do
13 modified room service orders without getting hurt as the job "requires a lot of neck
14 movements for everything" and Rosales could not sit through a GED course without
15 experiencing debilitating neck pain.  (Rosales Dep., ECF No. 45-1 at 12, 28–29, 38–39).

16 In short, the court agrees with Judge Bumatay's assessment of the record: "Bellagio
17 has demonstrated that Rosales could not perform the essential functions of his job, and that
18 there was no accommodation available to change that fact."  (ECF No. 36 at 5).  Because the
19 ADA does not require exempting Rosales from the essential functions of hospitalities and
20 side work or to reallocate these functions to other food servers, *see Dark*, 451 F.3d at 1088,
21 summary judgment is granted for Bellagio.

22 . . .
23 . . .
24 . . .
25 . . .
26 . . .
27 . . .
28 . . .

**James C. Mahan**
**U.S. District Judge**

**IV. CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Bellagio's motion for summary judgment (ECF No. 45) be, and the same hereby is, GRANTED. The clerk shall enter final judgment for Bellagio and close this case.

DATED March 1, 2021.

_____
UNITED STATES DISTRICT JUDGE